## In re SCHIBSTED.
### Patent Appeal No. 2751.

Court of Customs and Patent Appeals.
May 27, 1931.

Denison & Thompson, of Syracuse, N. Y. (Archibald Cox, of New York City, and T. K. Bryant, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C., (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an ex parte appeal from the decision of the Board of Appeals of the United States Patent Office, affirming in part and reversing in part the decision of the examiner, in relation to claims for a patent, seven of which claims were for the process of packing milk powder, and three of which were for the article. The article claims are for an airtight container having within it milk powder, which container contains no more oxygen per

pound than a certain percentage, and contains inert gas in certain quantities.

Claims 17 and 25 are illustrative and follow:

"17. The process of packing milk powder comprising reducing the free or uncombined oxygen content to an amount not substantially greater than five cubic centimeters for each pound of powder, sealing the powder in an air-tight container charged with a gas which does not contain free or uncombined oxygen and without permitting increase of the uncombined oxygen content substantially above five cubic centimeters for each pound of powder."

"25. An article of commerce consisting of an air-tight container, milk powder within the container having a free or uncombined oxygen content of not substantially more than five cubic centimeters for each pound of powder, and a gas which does not contain free or uncombined oxygen within the container at a pressure less than atmospheric pressure."

The applicant claims that in the prior art it was known that milk powder, when put up in vacuum—that is, when certain portions of free oxygen were withdrawn—would become rancid and undesirable after a certain length of time, and especially was this true of the powder containing fats, and that this was due to the presence of oxygen; that he discovered that if the oxygen content of the can could be reduced to below five cubic centimeters for each pound of powder, it would keep in its original condition indefinitely. He recognized that it was old to withdraw a portion of the air from the can and insert an inert gas, but points out that in the prior art no method had been proposed whereby the free oxygen could be reduced in the degree indicated. His method of accomplishing this desirable result is to first withdraw from the container, which contains the milk powder, as much free oxygen as may be withdrawn. He states that there will be left in the can from seven to eight cubic centimeters of oxygen per pound of powder, which is styled adhered oxygen, that is to say, that it adheres in and around the particles of milk powder, and that the particular function of his process is to further remove the adhered oxygen. After the first operation of withdrawing the oxygen from the can, an inert gas such as carbon dioxide is then inserted in the can through an appropriate opening, and a very small hole or opening is left in the container, which opening is not larger than .0002 of a square

inch for each pound of powder, and the opening preferably should be as small as .00006 of a square inch. The can is then left standing, sealed except as to the above-mentioned small opening, for as long as twenty hours, during which time the adhered or contained free or uncombined oxygen is freely given up by the powder. Again the vacuum pump is applied and a vacuum as nearly perfect as is possible is made to remove the adhered oxygen content of the powder. Additional inert gas is then inserted under a pressure of nine or ten pounds. The small opening is then sealed.

A large portion of the remaining adhered oxygen is absorbed by the gas, and applicant states that the product after such operation contains less than five cubic centimeters of oxygen per pound of powder, and that under this process it is possible to reduce it to three and five-tenths cubic centimeters per pound of powder.

The examiner rejected the claims upon the following references:

Franks, 1,232,271, July 3, 1917.

Heath et al., 1,406,380, February 14, 1922.

Boberg et al. (Brit.), 17,077, of 1913.

And with respect to the references and applicant's method said: " * * * The same acts in the same relation would necessarily produce the same result and it does not appear that applicant's claims or disclosure indicate either a new concept or new and unobvious procedural details."

Upon appeal to the Board of Appeals, method claims 21 and 22 were allowed for the reason that claim 22 contained the provision for "holding the kettle as charged for a period approximating twenty hours," and claim 21 specified a "considerable period." All the other claims were rejected by the board.

Appellant here argues that he is clearly entitled, not only to the allowance of the remainder of his process claims, but also to the allowance of his article claims, inasmuch as he has produced a new article of manufacture not before known to commerce.

We agree with the Board of Appeals that the allowed claims cover all of appellant's patentable contribution to the art as is indicated by the references cited.

All products of all processes are not patentable. In re Marden, 47 F.(2d) 957, 18 C. C. P. A. ——; In re Marden and Rich, 47 F.(2d) 958, 18 C. C. P. A. ——;

American Fruit Growers, Inc., v. Brogdex Co., 51 S. Ct. 328, 75 L. Ed. ——.

One may obtain a patent on a method of cleaning an article, but the cleaned article by reason of its unusual and new cleaned condition is not necessarily patentable, since cleaning is a question of degree.

It is clear, in the case at bar, that appellant's article is different from articles long known to the art, only in the degree of the absence of oxygen. In the first two above-cited cases, it was contended that appellant was entitled to a patent upon the articles respectively, pure uranium and pure venadium, because they did not exist prior to the application of appellant's method. We held that the article was not patentable. To the same effect is the recent United States Supreme Court case, American Fruit Growers, Inc., v. Brogdex Co., supra, in which the court held invalid a patent claim for an orange treated with borax.

We agree with the decision of the Board of Appeals, and it is affirmed.

Affirmed.